# In the United States Court of Federal Claims

No. 11-455C
(Filed under seal September 7, 2011)
(Reissued September 21, 2011)[1]

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                                *
EAST WEST, INC.,                                *    Pre-award bid protest; National Institutes of
                                                *    Health; motion to supplement the
            Plaintiff,                          *    administrative record with a declaration;
                                                *    motion to strike; impact of agency
     v.                                         *    communications on offeror; misleading
                                                *    communications; evidence of prejudice
THE UNITED STATES,                              *    added to court's record.
                                                *
            Defendant.                          *
                                                *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

*David S. Cohen*, Cohen Mohr, LLP, Washington, D.C., for plaintiff. *John J. O'Brien* and *William J. Bainbridge*, Cohen Mohr, LLP, both of Washington, D.C., of counsel.

*Jane C. Dempsey*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Claudia Burke*, Assistant Director, all of Washington, D.C., for defendant. *Cheryl S. Mpande*, Office of the General Counsel, United States Department of Health and Human Services, of Washington, D.C., of counsel.

## ORDER

WOLSKI, Judge.

Before the Court are plaintiff's motion to supplement the administrative record with a declaration from one of its officers, and defendant's motion to strike all references to this declaration in plaintiff's brief on the merits. For the reasons that follow, the motion to supplement is GRANTED-IN-PART and DENIED-IN-PART and the motion to strike is DENIED.

In this pre-award bid protest, East West, Inc. protests its exclusion from the competitive range by the Department of Health and Human Services' National Institutes of Health ("NIH" or "the agency"), in a procurement for custodial services. Prior to NIH's exclusion of East West

---

[1] Because of the protective order in this case, the parties were given the opportunity to request redactions. They requested none. Accordingly, the order is reissued for publication with some minor typographical corrections.

from the competitive range, East West brought three separate protests related to this procurement before the Government Accountability Office ("GAO"), which resulted in several corrective actions. Plaintiff also protested its competitive range exclusion before the GAO, and brought this case to our court once the GAO denied that protest. Plaintiff now moves to supplement the administrative record with the declaration of Mr. Steven Duong, who, as vice president of East West, was responsible for preparing East West's proposal in this procurement. Pl.'s Mot. to Supp. ("Pl.'s Mot.") at 1.

Mister Duong's declaration describes his reaction to two communications from NIH --- a letter apparently requesting a clarification and a written post-award debriefing from the solicitation's previous round. Duong Decl., Pl.'s App. at 700-02. In a June 26, 2009 letter, NIH prompted East West to respond to the following: "In a previous proposal, East-West, Inc. offered to reduce its housekeeping staff. However, in the current proposal, there are no reductions in housekeeping staff, but there have been administrative positions eliminated. Please explain." Admin. Rec. ("AR") Tab 19 at 1709. In response, East West explained that it never intended to reduce housekeeping staff, but instead sought to lower its proposed cost by reducing administrative staff. *Id.* at 1711. The record does not indicate that East West and NIH engaged in any further communication until NIH informed plaintiff on November 30, 2009 that the agency awarded the contract to another offeror. *See* AR Tab 24 at 1755. Following that award, on December 22, 2009 NIH provided East West with a post-award debriefing letter which listed among "[w]eaknesses or [d]eficiencies" that East West "[e]liminated only administrative positions" and "[d]id not reduce the housekeeping staff as mentioned in their previous proposal." *Id*. at 1716. Mister Duong's declaration explains that in light of NIH's award of the contract to another offeror, he interpreted these statements in NIH's request for clarification and post-award debriefing as a clear instruction that East West should reduce the number of proposed general cleaning staff in any subsequent round of proposals. Duong Decl. ¶ 6, Pl.'s App. at 702.

After East West protested the November 2009 award before the GAO, NIH took the corrective action of accepting revised technical proposals, AR Tab 27 at 1761, and revised business proposals, *see* Pl.'s App. at 556, for another round of evaluations. It was in this round that East West was excluded from the competitive range, AR Tab 9 at 614, giving rise to the current protest. In its most recent proposal revision, East West reduced the number of cleaning staff by ten, which Mr. Duong asserts was pursuant to his interpretation of the two NIH communications. Duong Decl. ¶ 7, Pl.'s App. at 702. In the previous round of the solicitation, East West was given the highest technical rating among the offerors, AR Tab 19 at 1716 (East West's "technical ranking was (1) with a score of 93" out of one hundred), but its most recent proposal received a technical rating (fifty-four out of one hundred) which was unacceptable for inclusion in the competitive range. AR Tab 9 at 614. East West's low score in the current round was due in part to what NIH considered an "unreasonably low" number of housekeeping personnel. *Id.* East West's reduction in proposed housekeeping personnel was found to be a significant weakness and factored into its exclusion from the competitive range. *Id.*

In its motion for judgment on the administrative record, plaintiff cites Mr. Duong's declaration just once. Pl.'s Mot. for J. at 15. This single citation is for the purpose of supporting

the claim that the two NIH communications discussed in Mr. Duong's declaration "were the primary reason that East West reduced its staff in its October 2010 proposal." *Id.* Based on this limited use, East West's desire to add Mr. Duong's declaration to the AR appears to be a reaction to the GAO decision denying its protest of the competitive range exclusion. In this decision, the GAO found that the agency's statements made it "reasonably clear that what the agency regarded as a weakness was the protester's *failure to furnish an explanation* for the change [in approach to reduced staffing] and was not signaling to East West that it needed to lower its proposed staffing level." AR Tab 22 at 1750 (emphasis added). The GAO further opined that it was "not apparent . . . based on the record [before it], that the [NIH] communications were the primary impetus behind the protester's decision to eliminate staffing positions." *Id.* The GAO suggested instead that East West may have been motivated to reduce its staffing numbers merely to make its price more competitive, not because of the NIH communications. *Id.* Mister Duong's declaration refutes this. *See* Duong Decl. ¶¶ 6-7, Pl.'s App. at 702.

Plaintiff asserts that Mr. Duong's declaration should be added to the administrative record because it is evidence that East West suffered competitive prejudice by relying on the agency's allegedly misleading communications --- citing our court's decisions in *Gentex Corp. v. United States*, 58 Fed. Cl. 634 (2003) and *Hunt Building Co. v. United States*, 61 Fed. Cl. 243 (2004), in which affidavits were added to the record to demonstrate such prejudice. Pl.'s Mot. at 1- 2 (citing *Gentex*, 58 Fed. Cl. at 648-49, and *Hunt Bldg.*, 61 Fed. Cl. at 271).[2] East West argues that effective judicial review is precluded unless the declaration is added to the record because "prejudice is from the plaintiff's perspective" and evidence of this perspective will necessarily be absent from the administrative record. Pl.'s Reply & Opp'n to Def.'s Mot. to Str. & Opp'n to Pl.'s Mot. Supp. ("Pl.'s Reply") at 2-3 (citing *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 367 (2009)). In the alternative, plaintiff requests that the Court admit the declaration to the court record for the purpose of determining whether plaintiff was prejudiced by the agency's communications, noting that recent opinions of our Court recognize that the court record, rather than the administrative record, may contain material outside the administrative record relating to

---

[2] The *Gentex* citation relied on *Strategic Analysis, Inc. v. United States Department of the Navy*, 939 F. Supp. 18, 23 n.7 (D.D.C. 1996), which in turn relied on *Data General Corp. v. Johnson*, 78 F.3d 1556, 1563 (Fed. Cir. 1996), for the proposition that "the submission of an affidavit of a company executive is a proper way to demonstrate prejudice." *See* Pl.'s Mot. at 2 (quoting *Gentex*, 58 Fed. Cl. at 649). The Court notes that *Data General* was an appeal from a General Services Administration Board of Contract Appeals ("GSBCA") proceeding under the Brooks Act (formerly found at 40 U.S.C. § 759(h)). In such protests, the GSBCA exercised *de novo* review of computer technology procurements, was not bound by an administrative record, and routinely allowed "rigorous discovery." *See* Robert C. Marshall, Michael J. Meurer & Jean-François Richard, *The Private Attorney General Meets Public Contract Law: Procurement Oversight by Protest*, 20 Hofstra L. Rev. 1, 20, 43 (1991); *United States v. Compusearch Software Sys.*, 936 F.2d 564 (Fed. Cir. 1991) (affirming the GSBCA's award of attorney's fees incurred by a successful protester during "contested discovery in which both parties filed extensive interrogatories and requests for production of documents").

questions of prejudice and relief. Pl.'s Reply at 4 (citing *PlanetSpace, Inc. v. United States*, 90 Fed. Cl. 1, 5 (2009) and *AshBritt*, 87 Fed. Cl. at 367).

Defendant's opposition does not mention either *Gentex* or *Hunt Building*, and instead focuses on the more recent Federal Circuit decision in *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009), and on plaintiff's initial failure to address the standard adopted in the latter opinion. *See* Def.'s Mot. to Str. & Opp'n to Pl.'s Mot. to Supp. ("Def.'s Opp'n") at 1-5. The government argues that Mr. Duong's declaration should not be added to the administrative record because it was not before the agency when the agency made the challenged decision, *id*. at 1; that Mr. Duong's "*post hoc*" opinions are irrelevant for judicial review, *id*. at 4; and that the materials Mr. Duong references are already in the administrative record. *Id*. at 5. In addition to opposing plaintiff's motion to supplement, defendant moves to strike all references to Mr. Duong's declaration in plaintiff's brief in support of its motion for judgment on the administrative record. Def.'s Opp'n at 1, 5.

Based on an apparent misreading of the legislative history, *see Gulf Group Inc. v. United States*, 61 Fed. Cl. 338, 350 n.25 (2004), the Supreme Court determined in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 419-20 (1971) ("*Overton Park*") that court review of informal agency decisions under the Administrative Procedure Act ("APA") did not require *de novo* trial proceedings but instead *could* be based on an administrative record.[3] Subsequent opinions stressed that APA review *should* normally be confined to a review of an administrative record. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). Our court reviews bid protests using the APA standards, *see* 28 U.S.C. § 1491(b)(4), and accordingly focuses this review on "the record actually before the agency." *Axiom*, 564 F.3d at 1380.[4] Although a "record" assembled by an agency after a procurement decision is challenged has been characterized as a "fiction" of sorts, *see Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 343 n.9 (2004) (collecting cases), an agency does not possess the discretion to make these records whatever it says they are. *See Tauri Group, LLC v. United States*, No. 11-361C, 2011 WL 3726283, at *4 (Fed. Cl. Aug. 10, 2011). Rather, the existence of an "administrative record already in existence," *Pitts*, 411 U.S. at 142, "depends on what the agency did in reaching its decision, not what it chooses to assemble after a protest is lodged." *Tauri Group*, 2011 WL 3726283, at *4. This record will normally include the information relied upon by the relevant agency decision makers and their advisers in reaching the decisions being challenged, and the contemporaneously articulated reasons for these decisions. *See* App. C to Rules of U.S. Ct. of Fed. Claims, ¶ 22 (listing some documents which may be considered core documents in a bid protest).

---

[3] The *Overton Park* decision is also internally inconsistent, as the Supreme Court rejected substantial evidence review because the agency's informal hearing was "not designed to produce a record that is to be the basis of agency action." *Overton Park*, 401 U.S. at 415. It then remanded the matter for a review to be based on an administrative record. *Id*. at 419-20.

[4] Congress, however, has by statute specified that certain post-decisional documents must also be included in the agency record for bid protests. *See* 31 U.S.C. § 3556.

When a court is not presented with "the full administrative record that was before the [agency decision maker] at the time he made his decision," *Overton Park*, 401 U.S. at 420, it may well prove impossible for the reviewing court to "verify[] that the relevant information was considered, the relevant factors were employed, and a satisfactory explanation was articulated." *Fort Carson Supp. Servs. v. United States*, 71 Fed. Cl. 571, 592 (2006) (citing *Overton Park*, 401 U.S. at 416, and *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). In such circumstances, "supplementation of the record [is] necessary in order not 'to frustrate effective judicial review.'" *Axiom*, 564 F.3d at 1381 (quoting *Pitts*, 411 U.S. at 142-43). This may entail completing the record by adding "information relied upon but omitted from the paper record." *Orion*, 60 Fed. Cl. at 343-44; *see also Tauri Group*, 2011 WL 3726283, at *5-6 (supplementing the administrative record with evaluation worksheets, findings, reports, and communications among evaluators). Such information might include tacit knowledge possessed by offeror and agency personnel of a highly technical and complex nature, requiring explication via affidavits or expert testimony. *See Hunt Bldg.*, 61 Fed. Cl. at 272; *Gentex*, 58 Fed. Cl. at 649; *Bradley v. United States*, 26 Cl. Ct. 699, 701 (1992). Upon a proper showing, discovery might be allowed seeking information intentionally left out of the record, such as evidence of bias or bad faith. *See Beta Analytics Int'l, Inc. v. United States*, 61 Fed. Cl. 223, 226 (2004). And the record may be supplemented with relevant information, contained in the procurement files or generally known in an industry or discipline, which was inappropriately ignored by an agency. *See Mori Assocs., Inc. v. United States*, 98 Fed. Cl. 572, 575 (2011); *Diversified Maint. Sys., Inc. v. United States*, 93 Fed. Cl. 794, 801 (2010). These categories all concern information that is necessary for effective judicial review, because they reflect what was or should have been considered by the agency.

Plaintiff's motion concerns none of the categories described above. Mister Duong's declaration does not purport to add information to the record that was before the agency when the challenged decision was made, nor does it relate to the agency's articulation of the challenged decision. All of the documents referenced in the declaration --- NIH's clarification request, East West's written response, and NIH's debriefing letter --- are already included in the administrative record. *See* AR at 1709, 1711, 1713-16. The declaration does not illuminate the actions or beliefs of the agency, but instead describes the thought processes of plaintiff's decision makers. *See* Duong Decl. ¶¶ 6-8. And the subject matter of the procurement --- custodial services --- does not involve highly technical and complex matters requiring further explanation. The declaration provides information concerning the reaction of plaintiff to certain agency communications, but the latter must be objectively "incorrect, confusing, or ambiguous" to be found misleading in this context. *DMS All-Star Joint Venture v. United States*, 90 Fed. Cl. 653, 670 (2010).[5] Thus, the declaration is not needed for an effective review of East West's

---

[5] The subjective views of an offeror could perhaps be relevant to whether an agency communication was misleading when those views were known to the agency but ignored during discussions. *See Gentex*, 58 Fed. Cl. at 653. Under those circumstances, not presented here, if the administrative record omitted the relevant communication of the offeror's views, a good case for supplementation could be made.

challenge to the merits of the agency's procurement decision.  Plaintiff's request to add Mr. Duong's declaration to the administrative record is therefore **DENIED**.

There is still, however, the issue of prejudice.  Prejudice is the link between any illegal or arbitrary procurement actions proven by a plaintiff, and harm to that party's direct economic interest.  *See Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359-62 (Fed. Cir. 2009); *USfalcon, Inc. v. United States*, 92 Fed. Cl. 436, 450 (2010).  East West argues that Mr. Duong's declaration is evidence of the prejudice it suffered by relying on the agency's allegedly misleading communications concerning housekeeping staff levels.  Pl.'s Mot. at 2; Pl.'s Reply at 3-4.  While decisions of our court pre-dating *Axiom* found that the relation of evidence to issues of competitive prejudice was a suitable ground for supplementing an administrative record, *see Hunt Bldg.*, 61 Fed. Cl. at 272; *Gentex*, 58 Fed. Cl. at 649, more recent decisions have clarified that such evidence is to be considered part of the *court's* record, not the administrative record.  *See PlanetSpace, Inc. v. United States*, 90 Fed. Cl. 1, 5 (2009); *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 366-67 (2009).  The Court finds these latter decisions persuasive, recognizing that a bid protester's entitlement to relief may often turn on considerations of injury that spring from the challenged actions, and to that extent could not be reflected in the agency record underlying those actions.  As Mr. Duong's declaration purports to explain how the allegedly misleading communications from the agency induced East West to make competitively-fatal changes to its proposal, it may remain a part of the court's record for purposes of any prejudice determinations.  Plaintiff's alternative request that the declaration be so considered is **GRANTED**.

Defendant's motion to strike from East West's merits brief all references to Mr. Duong's declaration is **DENIED**.  At the hearing on the motions for judgment, or in a supplemental brief if necessary (and requested), the government may object to any attempts to use the information in the declaration for purposes of proving the merits of the protest, and may make arguments concerning the weight to be given this information.

**IT IS SO ORDERED.**

s/ Victor J. Wolski

**VICTOR J. WOLSKI**
Judge
